[Cite as *State v. Lucas*, 2020-Ohio-1602.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                                        No. 108436

    v.                           :

CHARLES LUCAS,                           :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  April 23, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-16-609934-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Anthony T. Miranda, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellant.*

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Defendant-appellant Charles Lucas brings the instant appeal challenging his convictions for attempted murder, improperly discharging a firearm into a habitation, felonious assault, and breaking and entering. Specifically,

appellant argues that he was denied his constitutional rights to counsel and the effective assistance of counsel; his attempted murder conviction was not supported by sufficient evidence; the trial court erred in admitting "other acts" evidence, testimony regarding appellant's cell phone records, and evidence of appellant's prearrest silence; and that the state committed prosecutorial misconduct during closing arguments. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} The instant matter arose from a tumultuous relationship between appellant and the victim in this case, Kimberly Parker. Appellant and the victim met through an online dating website in 2010. They had a long-distance friendship at first. After they met in person, the relationship became romantic.

{¶ 3} The relationship went well for approximately one year, after that it became tumultuous. The victim testified that the relationship "became tumultuous really quickly" based on trust issues. (Tr. 240-241.) She explained, "[t]here was never a point in our relationship that there was not issues, except for the beginning of the relationship." (Tr. 264.)

{¶ 4} The trust issues began when appellant saw an email that the victim received from a male she met on a trip out of the country. The trust issue was a source of stress and problems in their relationship. Appellant often suspected and accused the victim of cheating on him.

{¶ 5} When the turmoil became worse, the victim attempted to end the relationship. The first time, the victim took a train from Cleveland to New Mexico. She eventually returned to Cleveland, however, and apologized for leaving.

{¶ 6} The second time, around 2014 or 2015, the victim drove from Cleveland to Youngstown where she spent the night in a hotel. The following morning, appellant confronted her in the hotel's parking lot, and they returned to Cleveland together.

{¶ 7} The victim explained that appellant tracked her to the hotel using an application, Life360, that enabled him to determine her location whenever her phone was connected to the internet. (Tr. 259.) In addition to the application, appellant had access to the victim's email and Facebook account.

{¶ 8} Appellant and the victim worked in the medical field. The victim worked as a travel nurse, and appellant was a medical consultant, training physicians and nurses on electronic health records. Around 2012 or 2013, the victim began working as a consultant. Appellant and the victim were employed by the same company at one time. They occasionally worked on projects together and worked in the same hospital.

{¶ 9} The victim testified that she finally broke up with appellant in 2016. They were both working on a project in Wisconsin. The victim learned that appellant had changed her schedule, such that they would be working at the same hospital, and appellant would be her direct supervisor on the project. After the first shift, the victim planned to leave the project and return home to Cleveland, where

she had a house in Garfield Heights.  She changed all of her account passwords so she could book a flight home without appellant's knowledge and to prevent him from tracking her whereabouts.

{¶ 10} The victim flew home and arrived at the Garfield Heights residence on May 24, 2016, between 6:00 and 7:00 a.m.  She locked her bedroom door and the door to a "sitting room" outside of her bedroom before going to sleep.  Around 9:00 or 9:30 a.m., she heard someone trying to open the door to her bedroom.  She recognized appellant's voice, told him to leave, and called 911.  The victim informed the dispatcher that there was an intruder in the house, and she identified appellant by name.  Appellant continued to bang on the door and attempt to open the door. He became "angry" and "pissed."

{¶ 11} The victim grabbed a 9 mm handgun that appellant kept in a drawer in the bedroom and ordered appellant not to come into the room.  He did not comply with her order, and as a result, the victim fired the weapon "in the corner of the door at the — on the floor, on the ground."  (Tr. 282.)  After firing the gun, the victim called 911 again and advised police she fired the weapon.  The police arrived on the scene and arrested her for discharging the gun and domestic violence.  (Tr. 283.) The victim was charged in Garfield Heights Municipal Court for her involvement in the May 24, 2016 shooting.

{¶ 12} A pretrial hearing was held on July 5, 2016 in Garfield Heights Municipal Court.  The case was dismissed during the pretrial hearing.  Appellant was very angry about the dismissal.

{¶ 13} The following day, July 6, 2016, the victim went to sleep around 11:00 p.m. In the middle of the night, the victim woke up to the smell of fire. Her mother, who also lived at the residence, also noticed the smell. Upon further inquiry, the victim did not see any smoke in the house. However, she noticed a bullet hole in the blinds covering her bedroom window. The blinds were also burnt, and some of the blind strands had been blown off. Based on these observations, the victim determined that "someone was shooting" into the residence. (Tr. 296-297.) She got down on the floor of her bedroom and told her mom to do the same.

{¶ 14} The victim called 911, and referenced the Garfield Heights Municipal Court case that had been dismissed to the dispatcher. The victim believed that the shooting was related to the dismissal. She believed that appellant was responsible for firing the shot into the residence. The victim informed the responding officers that she suspected appellant was responsible for the shooting.

{¶ 15} On September 26, 2016, the Cuyahoga County Grand Jury returned a five-count indictment charging appellant with (1) attempted murder, a first-degree felony in violation of R.C. 2923.02 and 2903.02(A); (2) improperly discharging into a habitation, a second-degree felony in violation of R.C. 2923.161(A)(1); (3) felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2); (4) breaking and entering, a fifth-degree felony in violation of R.C. 2911.13(B); and (5) domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A). Counts 1, 2, and 3 contained one- and three-year firearm specifications. Appellant

was arraigned on February 2, 2017. The trial court declared appellant indigent and assigned counsel to represent him. Appellant pled not guilty to the indictment.

{¶ 16} The pretrial procedural history of this case is extraordinarily extensive. Appellant filed several pro se motions that were denied on the basis that he was represented by counsel. The pro se motions filed by appellant included: (1) a motion to dismiss with prejudice pursuant to Crim.R. 12, filed on May 24, 2017; (2) a motion to dismiss on speedy trial grounds, filed on June 5, 2017; (3) a motion to reassign the case to a new judge, filed on September 1, 2017; (4) a motion to dismiss based on prosecutorial misconduct, filed on August 31, 2017.

{¶ 17} Because appellant was residing in Florida during pretrial proceedings, several motions to travel were filed by counsel.

{¶ 18} Three of the attorneys that had been assigned to represent appellant were permitted to withdraw from the representation. Appellant ultimately retained his own attorney, who filed a notice of appearance on September 11, 2017.

{¶ 19} Retained counsel represented appellant at trial that commenced on January 16, 2018, after appellant rejected a plea agreement offered by the state. At the close of the state's case, the state dismissed the domestic violence offense charged in Count 5 with prejudice. Defense counsel moved for a Crim.R. 29 judgment of acquittal on the remaining counts. The trial court denied defense counsel's Crim.R. 29 motion.

{¶ 20} Appellant testified on his own behalf. The defense rested and renewed the Crim.R. 29 motion. The trial court denied the renewed motion.

{¶ 21} The jury returned its verdict on January 22, 2018. The jury found appellant guilty on Counts 1, 2, 3, and 4. The trial court referred appellant to the probation department for a presentence investigation report and set the matter for sentencing.

{¶ 22} Like the pretrial procedural history, the procedural history in the case after the jury returned its verdict but before sentencing is also extensive. Appellant filed several pro se motions, including, but not limited to (1) motions for a new trial pursuant to R.C. 2945.79; (2) a motion for relief from judgment; (3) a motion to issue evidentiary subpoenas on February 7, 2018; (4) judicial notice that appellant terminated his retained counsel and a request for appointment of a new attorney filed on February 12, 2018; (5) several motions to dismiss wrongful convictions under Crim.R. 33(B) based on new exculpatory evidence; and (6) several motions for a new trial.

{¶ 23} The trial court assigned three new attorneys to represent appellant during the post-verdict proceedings. All three attorneys were permitted to withdraw, and appellant was permitted to proceed pro se on September 10, 2018.

{¶ 24} Appellant also filed multiple pro se appeals that were dismissed as untimely or based on appellant's failure to comply with the appellate rules of procedure. *State v. Lucas*, 8th Dist. Cuyahoga Nos. 106853, 106941, 106942, 106981, 107072, and 107145.

{¶ 25} The trial court granted appellant's motion to disqualify the trial judge, against whom appellant had filed a federal lawsuit. On September 17, 2018, the case

was reassigned to a new judge. Appellant also filed a mandamus action against the new trial judge.

{¶ 26} A hearing on appellant's motions for a new trial was held on April 2 and 3, 2019. At the close of the hearing, the trial court denied appellant's motions for a new trial. The court issued a judgment entry on April 19, 2019, ruling on several of appellant's motions, denying motions to vacate judgment, motions to dismiss, motions for a new trial, and a motion to recuse or disqualify the trial judge. The trial court set the matter for sentencing on April 10, 2019.

{¶ 27} The trial court held a sentencing hearing on April 10, 2019. The trial court determined that Counts 1, 2, and 3 merged for sentencing purposes. The trial court sentenced appellant on Count 1. The trial court imposed a prison sentence of 11 years: eight years on Count 1, consecutive to the three-year firearm specification; and one year on Count 4. The trial court ordered Counts 1 and 4 to run concurrently with one another. The trial court appointed the public defender's office to represent appellant for appellate purposes.

{¶ 28} Appellant filed the instant appeal on April 15, 2019. He assigns ten errors for review:

> I. Appellant was denied due process of law and his right to counsel when trial counsel displayed animus toward and bias against the appellant in a recorded phone conversation.
>
> II. [Appellant] was denied due process of law and his right to the effective assistance of counsel when defense counsel left the courtroom during the examination of the government's detective.

III.  [Appellant] was denied his right to counsel when the trial court instructed him that he could not consult with counsel during a break in the trial.

IV.  Appellant's convictions are not supported by sufficient evidence.

V.  The trial court committed plain error in allowing testimony of alleged "other acts" of [appellant] in addition to allowing evidence [that he] was a controlling boyfriend.

VI.  Trial counsel was ineffective when he failed to object to the numerous instance [sic] of inadmissible other acts and character evidence.

VII.  Trial counsel was ineffective where he failed to offer a meaningful and reliable testing of the adversarial system.

VIII.  [Appellant] was denied a fair trial when a law enforcement officer was permitted to testify as a geolocation expert using business records of a third party phone company.

IX.  The trial court erred in allowing the prosecutor to present evidence of [appellant's] pre-arrest silence.

X.  The prosecutor committed prosecutorial misconduct during closing argument when he made repeated attacks on defense counsel's honesty.

{¶ 29} For ease of discussion, appellant's assignments of error will be addressed out of order.  Furthermore, to the extent that appellant's assignments of error and the arguments raised therein are interrelated, they will be addressed together.

## II. Law and Analysis

### A. Right to Counsel and Ineffective Assistance of Counsel

{¶ 30} Appellant's first, second, and third assignments of error pertain to the Sixth Amendment right to counsel and the constitutional right to the effective assistance of counsel.

{¶ 31} The Sixth Amendment of the United States Constitution and Section 10, Article I of the Ohio Constitution provide criminal defendants with the right to counsel. *State v. Milligan*, 40 Ohio St.3d 341, 533 N.E.2d 724 (1988), paragraph one of the syllabus. A criminal defendant does not, however, have the right to counsel with whom he or she has a rapport or with whom he or she can develop a meaningful lawyer-client relationship. *State v. Henness*, 79 Ohio St.3d 53, 65, 679 N.E.2d 686 (1997). "Under the federal and state constitutions, the defendant is simply entitled to the effective assistance of legal counsel." *State v. Hudson*, 8th Dist. Cuyahoga No. 98967, 2013-Ohio-1992, ¶ 7.

{¶ 32} In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

## 1. Structural Error

{¶ 33} In his first assignment of error, appellant argues that he was denied his Sixth Amendment right to counsel due to counsel's animus towards and bias against him. In support of his argument, appellant relies on a recorded statement that counsel purportedly made the day before trial. In the recording, counsel allegedly asserted to appellant, "[y]ou don't want your attorney picking your jury, when you still owe your attorney money." Appellant argues that counsel's alleged pretrial statement was a clear attempt to extort him and an implicit threat that the counsel would "throw the trial if he was not paid." Appellant's brief at 12.

{¶ 34} As an initial matter, the parties dispute the standard of review that should be applied to appellant's claim of animus and bias. Appellant argues that this court should review for structural error, under which prejudice is presumed from the denial of the Sixth Amendment right to counsel, rather than ineffective assistance of counsel, under which a defendant is required to demonstrate prejudice. Specifically, appellant contends that counsel's animus towards and bias against him permeated the entire trial, and resulted in appellant being denied his right to counsel during critical stages of the proceedings. In support of his argument that he is not required to demonstrate prejudice, appellant directs this court to *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

{¶ 35} The state, on the other hand, argues that this court should review appellant's claim of bias in the context of the Sixth Amendment right to counsel and the constitutional right to the effective assistance of counsel. The state contends that

structural error is not implicated in this case because the purported "extortion" occurred during a pretrial conversation, and as a result, did not constitute a structural error pertaining to the trial itself.

{¶ 36} In *Cronic*, the United States Supreme Court established a narrow exception to the *Strickland* ineffective assistance of counsel requirements, and held that there are rare cases involving Sixth Amendment right to counsel violations that are presumptively prejudicial. For instance, the court explained that a presumption of prejudice is appropriate when counsel is "totally absent, or prevented from assisting the accused during a critical stage of the proceeding," or completely fails to subject the state's case to meaningful adversarial testing. *Cronic* at 659.

> The *Cronic* Court noted that "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Id.* at 657. When a claim of ineffective assistance can be made "only by pointing to specific errors made by trial counsel," a complete breakdown of the adversarial process has not occurred.

*State v. Dobson*, 8th Dist. Cuyahoga No. 92669, 2010-Ohio-2339, ¶ 17.

{¶ 37} In the instant matter, we find that appellant's reliance on *Cronic* is misplaced and that the structural-error analysis is inapplicable. Appellant was not denied his right to counsel. Appellant's counsel was present, participated in the trial, and cross-examined the state's witnesses. The record reflects that counsel did not fail to attempt to test the state's case.

{¶ 38} Structural error, such as the absence of counsel for a criminal defendant, is characterized by the "entire conduct of the trial from beginning to end [being] obviously affected[.]" *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111

S.Ct. 1246, 113 L.Ed.2d 302 (1991). The total deprivation of the right to counsel at trial is a constitutional deprivation and structural defect that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310. Structural error is said to infect the entire trial process. *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

{¶ 39} Appellant was not totally deprived of his right to counsel throughout the entire trial. Nor do we find that counsel's alleged pretrial statement infected the entire trial process.

{¶ 40} We emphasize that the attorney that made the alleged statement with which appellant takes issue is the fourth attorney that represented appellant. The trial court had assigned three attorneys to represent appellant between his arraignment on February 2, 2017, and September 11, 2017, when counsel filed a notice of appearance. Of the seven attorneys that represented appellant during the proceedings in the trial court, six were assigned by the trial court. The attorney that is the subject of appellant's first assignment of error, and who appellant claims attempted to extort him before trial, is the only attorney that appellant chose and retained on his own.

{¶ 41} There is no indication in the record that appellant voiced his dissatisfaction with counsel's preparation or alleged pretrial statement, attempted to terminate counsel's representation before or during trial, or brought counsel's purported extortion to the attention of the trial court. The record clearly reflects that appellant was able to express his opinion about the representation provided by

the other six attorneys that were assigned to represent him in this matter. After counsel allegedly attempted to extort appellant on the day before trial, appellant elected to proceed to trial with counsel representing him. Although appellant claims he brought the alleged extortion to the attention of the trial court's bailiff, there is no evidence in the record supporting this assertion. Appellant never raised counsel's alleged pretrial statement or extortion, or his concerns about retained counsel's performance to the trial court until he was found guilty at trial. The record reflects that neither the state nor the trial court received a copy of the recording until a post-verdict hearing in January 2019. Because appellant failed to terminate counsel or bring the alleged extortion to the attention of the trial court before or during trial, appellant arguably waived the issue regarding counsel's alleged pretrial statement, and appellant should not be permitted to complain about counsel's statement after he was convicted at trial.

{¶ 42} The recording is not in the record before this court. Assuming appellant's transcription of counsel's statement is true, our resolution of appellant's argument is in no way an endorsement of counsel's conduct. It is reprehensible for any attorney to make a threatening comment to his or her client, much less a criminal defendant facing an attempted murder charge. Nevertheless, based on the totality of the circumstances in this case, we cannot conclude that counsel's alleged statement constituted a complete denial of appellant's right to counsel.

{¶ 43} For all of these reasons, appellant's first assignment of error is overruled to the extent that he argues that he was denied his right to counsel based,

in part, on counsel's alleged pretrial statement, or that counsel's animus towards and bias against him constituted structural error that affected the structure of the trial or infected the entire trial process.

## 2. Leaving Courtroom

{¶ 44} In his second assignment of error, appellant argues that he was denied the effective assistance of counsel because his defense attorney left the defense table to use the restroom during the direct examination of Garfield Heights Police Lieutenant Robert Petrick.

{¶ 45} Appellant relies heavily on this argument in support of his first assignment of error. Specifically, appellant argues that counsel was "figuratively and, at times, literally absent." Appellant's brief at 13. Appellant cites the restroom incident as indicating that counsel "not only abandoned his role as an advocate in trial" but "literally abandoned [appellant] at times." Appellant's brief at 14. Appellant asserts that counsel's failure to advocate for him is "best illustrated" by counsel's use of the restroom. Appellant's brief at 14.

{¶ 46} The record reflects that defense counsel did, in fact, leave the courtroom at some point during the direct examination of Lieutenant Petrick. It is not clear exactly when counsel left, or how long counsel was gone for.[1]

{¶ 47} Defense counsel stipulated to Lieutenant Petrick's training as a police officer. (Tr. 401.) Thereafter, Lieutenant Petrick testified about general,

---

[1] During oral arguments, appellant's counsel asserted that defense counsel was gone for approximately 9 to 12 minutes.

background matters. Specifically, Lieutenant Petrick testified (1) that he took a course on investigative photography; (2) he was working on the evening of July 6, 2016, and into the morning of July 7, 2016; (3) he responded to a call for shots fired at 5131 East 131st Street; (4) he did not find any suspects that night; and (5) he spoke with the victim at the scene. (Tr. 401-404.) As Lieutenant Petrick was explaining, in general, why it was important to speak with people on the scene of a crime before beginning to take photographs, appellant brought defense counsel's absence to the attention of the trial court. The following exchange took place between appellant and the trial court:

> [Appellant]: Can we stop until my attorney comes back, so he can hear what [Lieutenant Petrick] is saying?
>
> THE COURT: Where did [your attorney] go?
>
> [Appellant]: I don't know. This is unusual.

(Tr. 404.)

{¶ 48} The trial court suspended further questioning until defense counsel returned. When he returned, defense counsel explained that he frequently had to use the restroom (every 20 minutes) due to a medication he was taking. (Tr. 405.) Thereafter, the state proceeded with the direct examination of Lieutenant Petrick, and Lieutenant Petrick testified about the photographs he took at the victim's residence.

{¶ 49} After reviewing the record, we find no merit to appellant's argument that counsel's use of the restroom demonstrated that counsel was totally absent or that counsel was prevented from assisting appellant during a critical stage in the

proceedings, such that prejudice should be presumed. Although appellant summarily asserts that counsel "left the courtroom several times," he fails to provide citations to the transcript, other than the incident during the direct examination of Lieutenant Petrick, in support of his assertion. *See* App.R. 16(A)(7).

{¶ 50} As noted above, appellant was not denied his right to counsel. With the exception of the medication-induced restroom emergency during the direct examination of Lieutenant Petrick, appellant's counsel was present, participated in the trial, and cross-examined the state's witnesses. During counsel's absence, Lieutenant Petrick provided general, background testimony, and the state's questioning stopped when the trial court became aware of counsel's absence.

{¶ 51} Finally, we note that it would have been ideal for counsel to request a recess before leaving the defense table to use the restroom. The record reflects that counsel requested a restroom break on other occasions during trial,[2] but for whatever reason, did not do so during Lieutenant Petrick's testimony. Furthermore, although the trial court did not appear to notice defense counsel leave the courtroom, the trial court should have suspended questioning sua sponte until counsel returned.

{¶ 52} For all of these reasons, appellant's first assignment of error is overruled to the extent that he argues that he was totally denied his right to counsel,

---

[2] Tr. 307.

counsel was totally absent during trial, or that counsel's restroom emergency prevented counsel from assisting appellant during a critical stage in the proceedings.

{¶ 53} After reviewing the record, we are also unable to conclude that counsel's restroom emergency during Lieutenant Petrick's testimony denied appellant his constitutional right to the effective assistance of counsel.

{¶ 54} In the instant matter, it is evident that appellant's ineffective assistance claim in this regard fails under the second *Strickland* prong. Assuming that (1) defense counsel left the courtroom immediately after stipulating to Lieutenant Petrick's training, and missed all of the testimony between the stipulation and the point at which appellant brought counsel's absence to the trial court's attention, and (2) defense counsel's brief absence from the courtroom constituted deficient performance, appellant cannot demonstrate prejudice — or a reasonable probability that but for counsel's absence during this testimony, the outcome at trial would have been different.

{¶ 55} The testimony that defense counsel may have missed — the fact that Lieutenant Petrick responded to the victim's residence, did not find any suspects that evening, spoke with the victim, and took photographs — would have been available to the defense in the police report and evident from the photographs exchanged during discovery. Finally, the record reflects that defense counsel cross-examined Lieutenant Petrick about the prior shooting at the residence, his knowledge about the prior shooting, and the photographs he took at the residence.

**{¶ 56}** For all of these reasons, appellant's ineffective assistance claim pertaining to counsel leaving the courtroom fails under the second *Strickland* prong. Appellant's second assignment of error is overruled.

### 3. Consulting with Counsel

**{¶ 57}** In his third assignment of error, appellant argues that he was denied his right to counsel when the trial court prohibited him from consulting with counsel during his trial testimony.

**{¶ 58}** The record reflects that defense counsel started and completed direct examination of appellant on the morning of Friday, January 19, 2018. After appellant's direct examination, the trial court called a 15-minute mid-morning recess and issued the following instruction to appellant: "[appellant], do not speak with your attorney and do not speak with the State of Ohio [during the break]." (Tr. 698.) Following the brief recess, the state cross-examined appellant.

**{¶ 59}** Appellant argues that the trial court's instruction denied him his Sixth Amendment right to counsel. In support of his argument, appellant directs this court to *Geders v. United States*, 425 U.S. 80, 91, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), and maintains that this case is indistinguishable from *Geders*. In *Geders*, the United States Supreme Court held that the defendant's Sixth Amendment right to counsel was violated when the trial court prevented him from consulting with counsel "about anything" during a 17-hour overnight recess. *Id.* at 91. The court explained that overnight recesses are commonly used by counsel and defendant to review the events that occurred that day and make tactical decisions.

{¶ 60} Appellant's reliance on *Geders* is misplaced. *Geders* involved a complete deprivation of access to counsel, during an extended 17-hour overnight recess. Here, the trial court did not restrict appellant's access to his attorney during an overnight recess or a lengthy recess. Rather, the record reflects that the trial court ordered appellant to refrain from speaking with his attorney or the prosecution during the 15-minute mid-morning break that was called after defense counsel finished the direct examination of appellant and before the state began cross-examining appellant.

{¶ 61} The Ohio Supreme Court has held that a criminal defendant does not have a constitutional right to consult with an attorney about testimony while testifying. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 96, citing *Perry v. Leeke*, 488 U.S. 272, 284-285, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989). "[W]hile a defendant has an absolute right to consultation before he begins to testify, a trial judge can decide that cross-examination is more likely to elicit truthful responses if it goes forward without allowing the defendant an opportunity to consult with his or her attorney." *Id.*, citing *Perry* at 281-282.

{¶ 62} In the instant matter, the trial court did not interfere with appellant's ability to consult with counsel before he took the stand. The trial court could have reasonably determined that appellant would be more truthful during cross-examination if he did not confer with defense counsel during the 15-minute recess.

{¶ 63} Finally, appellant appears to argue that by prohibiting him from consulting with counsel during the 15-minute recess, the trial court denied him an

opportunity to consult with counsel and weigh in on closing arguments. Appellant's argument is unsupported by the record.

{¶ 64} Following the 15-minute mid-morning recess, the state cross-examined appellant. Thereafter, appellant testified briefly on redirect and recross-examination. Following recross-examination, and before jury instructions or closing arguments, the trial court called a one-hour lunch recess. (Tr. 777.) Accordingly, to the extent that appellant argues that the 15-minute mid-morning recess was his only chance to discuss closing arguments with defense counsel, this argument is entirely belied by the record. Following the 15-minute mid-morning recess, appellant had a longer recess during the lunch hour to consult with counsel about closing arguments and any issues that he wanted to discuss with counsel during the 15-minute recess but was unable to because of the court's instruction.

{¶ 65} For all of these reasons, appellant's third assignment of error is overruled.

## B. Sufficiency

{¶ 66} In his fourth assignment of error, appellant argues that his convictions were not supported by sufficient evidence. Appellant only appears to challenge his attempted murder conviction. Specifically, he argues that the state failed to establish that appellant was the shooter, or that he discharged the gun with the intent to cause the victim's death.

{¶ 67} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist.

Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 68} Appellant was convicted of attempted murder in violation of R.C. 2903.02(A) and 2923.02. R.C. 2903.02(A), governing the offense of murder, provides, in relevant part, that "[n]o person shall purposely cause the death of another[.]" R.C. 2923.02(A), governing "attempt," provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."

{¶ 69} In support of his sufficiency challenge, appellant argues that there were no eyewitnesses to the incident, no description of the shooter, and no forensic evidence linking appellant to the scene. Appellant's argument is misplaced.

{¶ 70} It is undisputed that there was no direct evidence linking appellant to the shooting. However, the record reflects that the state presented sufficient circumstantial evidence to support appellant's conviction.

{¶ 71} Circumstantial evidence has the same probative value as direct evidence. *See Jenks*, 61 Ohio St.3d at 272, 574 N.E.2d 492. Circumstantial evidence can be used to demonstrate an offender's purpose or intent. *State v. Martin*, 8th Dist. Cuyahoga No. 91276, 2009-Ohio-3282, ¶ 23. The determination of whether an

offender had the specific intent to kill is made upon consideration of the facts and circumstances surrounding the crime. *State v. Barrow*, 8th Dist. Cuyahoga No. 101356, 2015-Ohio-525, ¶ 16. The relevant factors to consider in making this determination include the nature of the instrument used and the lethality of the instrument. *Id.*, citing *State v. Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, ¶ 23.

> The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death, coupled with relevant circumstantial evidence. *State v. Searles*, 8th Dist. [Cuyahoga] No. 96549, [2011-Ohio-6275, ¶ 11], citing *State v. Widner*, 69 Ohio St.2d 267, 431 N.E.2d 1025 (1982). "[P]ersons are presumed to have intended the natural, reasonable and probable consequences of their voluntary acts." *State v. Garner*, 74 Ohio St.3d 49, 60, 656 N.E.2d 623 (1995). "The act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown*, 8th Dist. [Cuyahoga] No. 68761, 1996 Ohio App. LEXIS 801, [] 6 (Feb. 29, 1996).

*Majid* at *id.*

{¶ 72} In the instant mater, appellant acknowledges that a gunshot is capable of causing death. However, he contends that there is nothing in the record demonstrating that the shooter did, in fact, discharge the gun into the room with the intent of causing the victim's death.

{¶ 73} After reviewing the record, we find that the state presented sufficient circumstantial evidence, if believed, to support appellant's attempted murder conviction. First, the circumstantial evidence presented at trial by the state supported a reasonable inference that appellant fired the weapon with the intent of

killing the victim. Appellant fired the weapon into the victim's bedroom, rather than into a common area of the residence, such as the kitchen or living room. The shot was fired into the bedroom at night while the victim was sleeping. The bullet passed over the victim's bed.

{¶ 74} The state's evidence demonstrated that appellant stayed at the Garfield Heights residence with the victim. Accordingly, the jury could have reasonably determined that appellant was familiar with the residence, knew which room the victim slept in, and knew the manner in which the bed was positioned inside the room.

{¶ 75} The state's evidence demonstrated that the shot was not fired into the room from a significant distance. Bureau of Criminal Investigation Special Agent Brenda Butler, recognized as an expert in the field of shooting reconstruction, confirmed that the shooter was either "against the glass or very, very near proximity to the glass[.]" (Tr. 381.) Agent Butler explained that the shot could not have been fired from beyond the six-foot privacy fence surrounding the backyard.

{¶ 76} The fact that the victim was not harmed by the bullet is not a defense to attempted murder. *State v. Jenkins*, 15 Ohio St.3d 164, 220, 473 N.E.2d 264 (1984). Agent Butler testified that the trajectory of the bullet traveled from the window, across the surface of the victim's bed at a height of 2.26 feet. (Tr. 385.) Furthermore, Agent Butler explained that the blinds were closed, and as a result, she opined that it would have been extremely difficult, if possible at all, for the shooter to see exactly where he or she was shooting into the bedroom.

{¶ 77} Based on this circumstantial evidence, a reasonable inference could be made that appellant discharged the gun into the victim's bedroom with the intent to kill her. Second, the state also presented sufficient circumstantial evidence regarding motive.

{¶ 78} The victim testified that she could not think of anyone other than appellant that had a motive to harm her. Two months before the July 2016 shooting, the victim had ended the relationship with appellant. After doing so, an incident occurred at the Garfield Heights residence during which appellant attempted to break into the victim's bedroom and the victim fired a 9 mm handgun through the bedroom door. The day before the July 2016 shooting, the case against the victim was dismissed and appellant was very angry about the dismissal. Specifically, he called the victim a b***h in open court during the pretrial hearing, and he wanted her to be charged with attempted murder.

{¶ 79} Garfield Heights Police Sergeant Matt Berdysz testified that he was dispatched to the victim's residence on July 6, 2016, for a report of a shot fired. He spoke with the victim on the scene. During his investigation he learned that the victim suspected that appellant was involved in the shooting: "[w]e asked her if she knew anybody who would want to do anything like that or try to harm her. And she stated, yes, her ex [appellant] would be the only person that she suspected." (Tr. 340.)

{¶ 80} Finally, the state presented circumstantial evidence regarding identity based upon which a reasonable inference could be made that appellant was,

in fact, the person that fired the gun into the victim's bedroom. The victim reported the shooting around 2:40 a.m., leading investigators to believe that the shot was fired a couple of minutes before that. Cleveland Police Crime Analyst Todd Wiles testified that appellant's cell phone accessed three different cellular towers between 1:30 and 3:00 a.m. Appellant's cell phone accessed the cellular tower that was nearest to the victim's residence at 2:51 a.m. on the night of the shooting. On cross-examination, Wiles asserted that appellant's phone accessed a cellular tower in the "Cleveland Heights area" around 1:40 a.m. (Tr. 490.) Wiles confirmed that the cell phone records indicate that appellant was "in the Garfield neighborhood" at 2:51 a.m. (Tr. 491.)

{¶ 81} Garfield Heights Police Detective James Mendolera testified that he reviewed surveillance video footage from the Garfield Heights Service Garage, located less than one-half mile from the victim's residence. Around 2:03 a.m., the video shows a white sedan vehicle, "possibly a Fusion," travelling eastbound past the service garage. (Tr. 552-553.) Approximately eight minutes later, around 2:11 a.m., the video shows a male walking westbound past the service garage in the direction of the victim's home. Detective Mendolera explained that the victim reported the shooting around 2:40 a.m. He opined that the shot was fired a couple of minutes before that. The video shows an individual at 2:42 a.m., running towards the direction of the white sedan. Detective Mendolera testified that the male that was running around 2:42 a.m. appeared to be the same individual that had been walking

towards the victim's residence around 2:11 a.m. Finally, Detective Mendolera confirmed that appellant drove a white Ford Fusion sedan. (Tr. 553.)

{¶ 82} Based on the testimony of Crime Analyst Wiles and Detective Mendolera, the jury could have reasonably inferred that the individual shown in the surveillance footage was, in fact, appellant.

{¶ 83} Finally, appellant challenges the quality of the service garage video footage, arguing that the video evidence was "of poor quality." Appellant's brief at 21. Appellant also disputes the state's theory of the case that appellant fired the shot into the victim's bedroom window with the intent to kill her. Appellant suggests that the shot was not fired with the intent to kill, but rather "as a means of intimidation or a shocking scare tactic." Appellant's brief at 22. These arguments pertain to the manifest weight of the evidence, not whether appellant's conviction is supported by sufficient evidence.

{¶ 84} For all of the foregoing reasons, appellant's fourth assignment of error is overruled. Appellant's attempted murder conviction was supported by sufficient evidence.

### C. "Other Acts" Evidence

{¶ 85} In his fifth assignment of error, appellant argues that the trial court erred by admitting the victim's "other acts" testimony about her relationship with appellant. Specifically, appellant contends that the trial court erred by permitting the victim to testify that appellant was abusive in the past and that he was a controlling boyfriend.

{¶ 86} As an initial matter, appellant acknowledges that defense counsel did not object to the victim's testimony with which he takes issue, and as a result, he has waived all but plain error.

{¶ 87} Evid.R. 404(B), "other acts," provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith."  However, such evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  *Id.*

{¶ 88} After reviewing the record, we find no basis upon which to conclude that the trial court committed plain error in permitting the victim to testify about her relationship with appellant.  When read in context, the victim's testimony was not offered to prove that appellant acted in conformity with his character as an abusive, jealous, or controlling boyfriend.  Rather, the victim's testimony about her relationship with appellant was presented to show that the relationship was strained.  Additionally, the victim's testimony was presented for the legitimate purposes of demonstrating appellant's motive and intent.

> The Ohio Supreme Court has held that evidence of domestic violence proving a "strained relationship" between the defendant and victim is admissible in a murder case to show motive, intent, and absence of mistake.  *State v. Nields*, 93 Ohio St.3d 6, 752 N.E.2d 859 [(2001)]. Moreover, many courts have allowed the admission of domestic violence evidence to prove identity when the defendant denies being the perpetrator of the crime, thereby making identity a material issue, and when the domestic violence is temporally connected to the alleged crime.  *See, e.g., State v. Griffin*[, 1st Dist. Hamilton No. C-020084, 2003-Ohio-3196]; *State v. Newcomb*, [3d Dist. Logan No. 8-01-07,

2001 Ohio App. LEXIS 5237 (Nov. 27, 2001)], *appeal not allowed*, 94 Ohio St.3d 1489, 763 N.E.2d 1186.

*State v. Thompson*, 8th Dist. Cuyahoga No. 81322, 2003-Ohio-3939, ¶ 24.

**{¶ 89}** Here, in addition to being admissible as relevant background information, and to prove motive and intent, the testimony was admissible to prove the identity of the shooter, which appellant placed at issue by denying any involvement in the shooting. As noted above, the victim immediately believed that the shooting was related to appellant and the Garfield Heights Municipal Court case that had been dismissed the day before the shooting occurred.

**{¶ 90}** For all of these reasons, appellant has failed to demonstrate that the victim's testimony about her relationship with appellant constituted plain error. The victim's testimony in which she detailed the strained relationship between her and appellant was admissible to show motive, intent, and to prove identity. Appellant's fifth assignment of error is overruled.

**{¶ 91}** Based on our resolution of appellant's fifth assignment of error, appellant's sixth assignment of error, in which he argues that counsel was ineffective for failing to object to the victim's purportedly inadmissible "other acts" testimony, fails under the *Strickland* prong. Because the testimony was presented for a legitimate purpose, appellant is unable to demonstrate prejudice — a reasonable probability that the outcome at trial would have been different had counsel objected to the victim's testimony. Appellant's sixth assignment of error is overruled.

### D. Wiles's Testimony

{¶ 92} In his eighth assignment of error, appellant argues that the trial court erred by permitting Crime Analyst Todd Wiles to testify as an expert witness regarding appellant's cell phone records. Appellant appears to argue that Wiles testified as an expert witness without the requisite qualifications and that his testimony regarding the location of the cellular towers with which appellant's phone connected went beyond the scope of a lay witness's knowledge and experience. Appellant's arguments are misplaced and unsupported by the record.

{¶ 93} Initially, appellant concedes that the parties reached an agreement before trial regarding appellant's cell phone records and Wiles's testimony about the records. Counsel had filed a motion in limine on October 27, 2017, seeking to preclude the state from introducing the cell phone records or maps of the cellular towers with which the phone connected on the basis that the defense had not received the credentials of the state's witness nor any expert report. On January 16, 2018, before jury selection commenced, defense counsel withdrew the motion in limine based on the agreement with the state.

{¶ 94} Because the parties reached an agreement regarding Wiles's testimony and the cell phone records and defense counsel did not object to Wiles's testimony, appellant has forfeited all but plain error.

{¶ 95} Wiles testified that appellant's cell phone records from Sprint used Greenwich Mean Time ("GMT"). He explained that GMT is four hours ahead of Eastern Standard Time ("EST"). Wiles converted the time frames reflected in the phone records from GMT to EST. Appellant has not cited any authority indicating

that expert testimony is required to perform such a conversion. Nevertheless, this conversion, a simple matter of addition or subtraction, is within a layperson's knowledge and experience.

{¶ 96} Wiles also testified that he generated a map using appellant's phone records and the cellular towers with which the phone connected.

{¶ 97} In *State v. Daniel*, 2016-Ohio-5231, 57 N.E.3d 1203 (8th Dist.), Wiles also created a map based on the information in the defendant-appellant's cell phone records. In *Daniel*, the defendant-appellant argued that Wiles's testimony was inadmissible because it was unreliable and outside of the scope of a layperson's knowledge and experience. This court rejected the defendant-appellant's argument, concluding that Wiles's testimony was admissible as lay testimony because it was limited to a review of the defendant's cell phone records and the location of the cellular towers with which the phone connected in relation to the crime scene. *Id.* at ¶ 69, 72. This court explained that Wiles's testimony comparing the data in cell phone records to locations that are relevant to the case does not require "'specialized knowledge, skill, experience, training, or education'" regarding cellular networks. *Daniel* at ¶ 69, quoting Evid.R. 702(B).

{¶ 98} In the instant matter, to the extent that appellant argues that the state was required to call an expert to testify about appellant's cell phone records, the location of the cellular tower appellant's phone connected to, or to create a map based on this information, appellant's argument is misplaced. Pursuant to *Daniels*, Wiles's testimony in this regard was admissible as lay testimony.

{¶ 99} Finally, appellant appears to argue that Wiles exceeded the scope of lay testimony by testifying about (1) the difference between data transmission of a phone that is off and a phone that is on, and (2) the concept of "triangulation." The record reflects that Wiles's testimony regarding data transmission and triangulation was elicited by defense counsel on cross-examination. Under the invited error doctrine, a litigant may not "'take advantage of an error which he himself [or she herself] invited or induced.'" *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000), quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. Therefore, even if Wiles's testimony about data transmission and triangulation exceeded a lay witness's knowledge and experience, appellant cannot complain in this appeal about the testimony elicited by defense counsel at trial.

{¶ 100} For all of these reasons, appellant's eighth assignment of error is overruled.

### E. Prearrest Silence

{¶ 101} In his ninth assignment of error, appellant argues that the trial court erred by permitting the state to present evidence of appellant's prearrest silence at trial. In support of his argument, appellant directs this court to the following testimony of Detective Mendolera during direct examination:

> [State]: After [the August 1, 2016 phone conversation with appellant], did you conclude your investigation?
>
> [Detective Mendolera]: Yeah, I think I put everything together and I made up my maps and then I submitted it to the grand jury. I tried to

call [appellant] a few more times to tell him that you need to get in here for an interview or you're going to — I'm going to submit this to the grand jury, because what you told me [regarding appellant's alibi] does not add up. And [appellant] never called back and I never talked to him again, so I submitted it to the grand jury and then he was indicted.

(Tr. 567.)

{¶ 102} Defense counsel did not object to this testimony, and as such, we review for plain error.

{¶ 103} Under the Fifth Amendment of the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself [or herself]." The protections of the Fifth Amendment apply to the states through the Fourteenth Amendment. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 11, citing *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). In *Leach*, the Ohio Supreme Court held that the Fifth Amendment privilege against self-incrimination is violated by presenting evidence of a defendant's prearrest silence as substantive evidence of the defendant's guilt. *Id.* at syllabus.

{¶ 104} In the instant matter, we find no basis upon which to conclude that Detective Mendolera's testimony with which appellant takes issue constituted an impermissible comment regarding appellant's prearrest silence that violated appellant's Fifth Amendment privilege. After he obtained the service garage video, Detective Mendolera placed a phone call to appellant on July 8, 2016, to determine his whereabouts around the time of the shooting. At some point, they became disconnected, and appellant called Detective Mendolera back. (Tr. 549.) Appellant

told him that he was in the vicinity of East Cleveland between 2:40 a.m. and 3:01 a.m. on July 7, 2016. Appellant claimed that he stayed at Parker's Guesthouse in East Cleveland before going to the airport. Detective Mendolera explained that appellant was very vague about what he was doing between 2:40 and 3:00 a.m. Detective Mendolera testified that East Cleveland is "a substantial distance away from Garfield Heights." (Tr. 554.) Appellant confirmed during this phone call that he drives a white Ford Fusion.

{¶ 105} Appellant contacted Detective Mendolera again on July 26, 2016, to get an update regarding the investigation. (Tr. 557.) During this phone conversation, appellant slightly changed his story, indicating that he got a car wash after leaving Parker's Guesthouse. Appellant asserted that the car wash was in or around Warrensville Center Road in East Cleveland. Appellant denied being in Garfield Heights, or travelling on I-480 on the evening or early morning hours when the shooting occurred.

{¶ 106} After reviewing the record, there is no indication that appellant invoked his right to remain silent during his interactions with Detective Mendolera. In fact, Detective Mendolera testified that it was appellant that called him, not the other way around. (Tr. 566.) He spoke with Detective Mendolera of his own free will about his whereabouts at the time of the shooting. Appellant did not invoke his Fifth Amendment right, never expressed the desire to confer with an attorney before speaking with Detective Mendolera, and voluntarily answered all questions, even when confronted with evidence that contradicted his alibi.

{¶ 107} Finally, the record reflects that the prosecutor was not eliciting testimony about appellant's prearrest silence. Rather, the prosecutor was asking Detective Mendolera about the steps he took during the course of his investigation. Detective Mendolera's testimony that appellant did not return his phone call does not constitute an impermissible comment that appellant exercised his right to remain silent. Accordingly, we find that the trial court did not commit plain error in admitting Detective Mendolera's testimony.

{¶ 108} Appellant's ninth assignment of error is overruled.

### F. Prosecutorial Misconduct

{¶ 109} In his tenth assignment of error, appellant argues that the state committed prosecutorial misconduct during closing arguments when the prosecutor "comment[ed] repeatedly on the moral character of [appellant's] trial counsel[.]" Appellant's brief at 37.

{¶ 110} Defense counsel did not object to the state's purportedly improper remarks, therefore, appellant has forfeited all but plain error. *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). Reversal for prosecutorial misconduct is warranted under the plain error standard if it is clear that but for the improper conduct, the accused would not have been convicted. *Cleveland v. Coleman*, 8th Dist. Cuyahoga No. 97128, 2012-Ohio-3942, ¶ 41, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68.

> The test to determine if there was prosecutorial misconduct during closing arguments is whether the remarks were improper and if so, whether they prejudicially affected the defendant's substantial rights.

*State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The record as a whole must be reviewed in its entirety to determine whether the disputed remarks were unfairly prejudicial. *State v. Moritz*, 63 Ohio St.2d 150, 157, 407 N.E.2d 1268 (1980). The touchstone of our analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Furthermore, an appellant must show that there is a reasonable probability that, but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Loza*, 71 Ohio St.3d 61, 78-79, 641 N.E.2d 1082 (1994).

*State v. Erker*, 8th Dist. Cuyahoga No. 107790, 2019-Ohio-3185, ¶ 99.

{¶ 111} In the instant matter, appellant points to three different comments that were purportedly improper. First, the prosecutor stated,

[w]hen we take a look at the relationship [between appellant and the victim], yeah, it was called abusive. It's unfortunate that in 2018 we still have defense attorneys tha[t] only rely on abusive relationships for those that are physical and completely ignore the fact that [appellant] had an absolutely mentally abusive relationship with this victim, tracked her e-mails, by her testimony, and confirmed by his. Yeah, it was abusive.

(Tr. 848.)

{¶ 112} After reviewing the record, we find that appellant has failed to demonstrate plain error in this respect. During defense counsel's closing argument, counsel suggested that the relationship between appellant and the victim was not an abusive relationship because he never threatened the victim with violence. In making the comment with which appellant takes issue, the prosecutor was attempting to tell the jury that abuse can be physical, mental, or both. The prosecutor's comment about the mentally abusive relationship between appellant and the victim was a permissible and reasonable inference based on the victim's trial testimony.

{¶ 113} Second, the prosecutor stated,

> We know [appellant] owned two [other guns] at the time; their locations, I don't know. That's not important, though. This idea that you didn't hear any testimony about, well, maybe he picked one up when he was up here [in Cleveland] and disposed of it. For a defense attorney to get up here and say that to you is so disingenuous, because he knows that's pure speculation. He's been doing this longer than I have, he knows I can't bring that up because we don't know, it's speculative.

(Tr. 853-854.)

{¶ 114} After reviewing the record, we find that appellant has failed to demonstrate plain error in this respect. First, we do not agree that the prosecutor's statement was an improper attack on the character of defense counsel. Furthermore, the prosecutor's comment that defense counsel was speculating about the caliber of the gun used during the July 2016 shooting was a reasonable inference based on the evidence presented at trial.

{¶ 115} During defense counsel's closing argument, counsel suggested that appellant could not have been involved in the shooting because police found a 9 mm shell casing at the scene, but appellant's 9 mm gun was still in police custody from the May 2016 shooting. The evidence presented at trial, however, indicated that investigators were unable to determine the caliber of the bullet fired through the bedroom window because the bullet was obliterated. Appellant cannot demonstrate that but for the prosecutor's characterization of defense counsel's argument about the caliber of the gun used as "speculative" and "disingenuous," the outcome at trial would have been different.

{¶ 116} Third, during defense counsel's closing argument, counsel stated that the prosecution did not want the jury to see the entirety of a YouTube video that had been used to impeach appellant on cross-examination. The prosecutor objected to defense counsel's comment, and the trial court sustained the objection. During the prosecutor's closing argument, the prosecutor described defense counsel's argument pertaining to the YouTube video as "utterly irresponsible" and "utterly disingenuous." (Tr. 857.) The prosecutor went on to explain that the video was not introduced or played in its entirety because it was presented for the limited purpose of impeaching appellant's testimony, rather than introduced as substantive evidence of appellant's guilt.

{¶ 117} After reviewing the record, we find that appellant has failed to demonstrate plain error in this respect. Even if the prosecutor's characterization of defense counsel's argument as "irresponsible" and "disingenuous" was improper, the comment did not clearly affect the outcome at trial.

{¶ 118} For all of these reasons, appellant's tenth assignment of error is overruled.

## G. Failure to Test the Adversarial System

{¶ 119} Finally, in his seventh assignment of error, appellant argues that he was denied his constitutional rights to counsel and effective assistance of counsel based on counsel's failure to challenge the state's case through the adversarial

process.  Appellant contends that prejudice should be presumed pursuant to *Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657.

{¶ **120**} As an initial matter, we note that appellant merely restates many of the arguments he raised in other assignments of error regarding counsel's performance.  Specifically, he argues that counsel failed to test the state's case by (1) failing to object to the victim's "other acts" testimony (assignment of error 5 and 6); (2) attempting to extort appellant on the day before trial (assignment of error 1); (3) failing to object to Detective Mendolera's testimony about appellant's prearrest silence (assignment of error 9); and (4) failing to object to Detective Mendolera's testimony about appellant's alibi.  Appellant's arguments have already been addressed above.

{¶ **121**} As noted above, appellant was not denied his right to counsel.  Appellant's counsel was present, participated in the trial, and cross-examined the state's witnesses.  The record reflects that counsel did not fail to attempt to test the state's case.  *See State v. Campbell*, 8th Dist. Cuyahoga Nos. 100246 and 100247, 2014-Ohio-2181, ¶ 26, fn. 12 (rejecting the defendant-appellant's argument that *Cronic* applied and counsel's ineffective assistance resulted in a breakdown of the adversarial process at trial, where defense counsel was present, participated in the trial, and cross-examined the state's witnesses.)

{¶ **122**} To the extent that appellant contends that counsel failed to test the state's case during voir dire and opening statements, this argument is misplaced.  Defense counsel was present for and participated in voir dire.  Jury selection is not

part of the state's case against appellant that counsel failed to challenge. Defense counsel also made an opening statement to the jury. It is well-established that opening statements — both from the prosecution and defense counsel — are not evidence. Accordingly, appellant cannot demonstrate that he was denied his right to counsel based on counsel's failure to challenge the state's case against him during voir dire and opening statements.

{¶ 123} Appellant further argues that counsel's failure to test the state's case constituted ineffective assistance of counsel. As noted above, a defendant must show that (1) counsel's performance was deficient, falling below an objective standard of reasonable representation, and (2) counsel's errors prejudiced the defendant, such that a reasonable probability exists that but for counsel's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraphs two and three of the syllabus.

{¶ 124} Appellant's arguments regarding counsel's performance during voir dire and opening statements fail under the second *Strickland* prong because appellant cannot demonstrate prejudice — or a reasonable probability that but for counsel's purported deficiencies during voir dire and opening statements, the outcome at trial would have been different.

{¶ 125} Appellant's seventh assignment of error is overruled.

### III. Conclusion

{¶ 126} After thoroughly reviewing the record, we overrule appellant's assignments of error and affirm the trial court's judgment. Appellant was not denied his constitutional rights to counsel or the effective assistance of counsel. Appellant's convictions were supported by sufficient evidence. The trial court did not commit plain error in admitting the victim's testimony about her strained relationship with appellant or permitting Wiles to testify about appellant's cell phone records. The state did not impermissibly comment on appellant's prearrest silence, nor did the state commit prosecutorial misconduct during closing arguments.

{¶ 127} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

MARY EILEEN KILBANE, J., and
MARY J. BOYLE, P.J., CONCUR IN JUDGMENT ONLY